[L. A. No. 6399. Department Two.—February 25, 1921.]

SADIE STAUTER, Respondent, v. DELLA A. CARI-
THERS, Appellant.

[1] DIVORCE—INTERLOCUTORY DECREE—LAWFUL SEPARATION.—Where there is an interlocutory judgment decreeing that the parties are entitled to a divorce, even though the married status continues, the law, under the circumstances, permits the separation and recognizes it as rightful in substance.

[2] ADOPTION—MARRIED WOMAN—INTERLOCUTORY DECREE OF DIVORCE—CONSENT OF HUSBAND UNNECESSARY.—A married woman who has been granted an interlocutory decree of divorce is lawfully separated from her husband within the meaning of section 223 of the Civil Code and may adopt a minor without her husband's consent.

[3] ID.—STATUS OF PETITIONER—ABSENCE OF CONCEALMENT.—The fact that in an adoption proceeding the petitioner referred to herself

as a widow and in the order granting the petition such reference was omitted is insufficient to warrant the inference that the status of the petitioner was concealed from the court.

APPEAL from a judgment of the Superior Court of Los Angeles County setting aside an order of adoption. Leslie R. Hewitt, Judge. Reversed.

The facts are stated in the opinion of the court.

John F. Poole for Appellant.

Milton M. Cohen for Respondent.

LENNON, J.—The plaintiff in this action sought and secured a decree setting aside an order granting the petition of defendant, Della A. Carithers, for the adoption of the minor, Katherine Virginia Stauter. The adoption was consented to by the parents of the child, the plaintiff, Sadie Stauter, and her divorced husband, who is the son of defendant, and the order of adoption was entered entirely without objection. In May, 1918, plaintiff instituted the present proceeding for the cancellation of the said order, relying upon the following undisputed facts: Defendant and one Charles W. Lyke were married in 1913; in 1915 they ceased to live together and ever since that time have continued to live apart; in the same year—1915—defendant instituted divorce proceedings against said Charles Lyke, wherein an interlocutory decree was entered in her favor on September 20, 1916, followed by a final decree of divorce in March, 1918. The order of adoption was granted on August 7, 1917, while the interlocutory decree of divorce was in force and over a month before defendant became entitled to a final judgment in the divorce proceedings. Charles Lyke did not consent to the adoption and it does not appear that he ever had any knowledge thereof.

Plaintiff's theory is that, by reason of the absence of the consent of defendant's husband, the court was without jurisdiction to enter the order of adoption. The trial court, apparently accepting this view of the case, set aside and canceled the order of adoption. Upon a new trial of the instant case the same result was reached for a second time, from which defendant appeals.

Section 223 of the Civil Code reads as follows: "A married man, not lawfully separated from his wife, cannot adopt a child without the consent of his wife, nor can a married woman, not thus separated from her husband, without his consent, provided the husband or wife, not consenting, is capable of giving such consent." Eliminating the portions which have no bearing upon the facts of the present case, the section provides, in effect, that a married woman not lawfully separated from her husband cannot adopt a child without her husband's consent. The only limitations upon adoption in this state are the rules prescribed by the chapter of the Civil Code which deals with adoption (Civ. Code, sec. 221), and section 223 of that chapter, above quoted, covering and controlling adoption by married persons, does not require the consent of a husband from whom a wife is lawfully separated. It follows that, if a married woman who has been granted an interlocutory decree of divorce can be said to be "lawfully separated" from her husband, then she may adopt without her husband's consent, and the court did not lack jurisdiction to enter the order attacked in the instant case. Our attention is, therefore, concentrated upon a consideration of the legal consequences of an interlocutory decree of divorce.

[1] The effect and nature of such a decree are noted in the case of *London Guarantee & Accident Co.* v. *Industrial Acc. Com.,* 181 Cal. 460, [184 Pac. 864], where it is said: "An interlocutory judgment of divorce is, therefore, so far as it determines the rights of the parties, a contract between them. It is temporary and provisional in its nature, it is true, but it settles the rights of the parties for the time being, and until some action, proceeding, or motion is begun to change the status, and some order is made thereon which has that effect, or until they become reconciled and resume marital relations, in which event their mutual obligations are, for the time being at least, restored . . . the personal obligations between them remain in abeyance until changed by some subsequent action or agreement which is binding upon the husband. *They are, by virtue of the interlocutory judgment, living separate by agreement.*" (Italics ours.) In general, the law discourages the separation of husband and wife. It does, however, authorize and recognize such separation under certain

conditions. For instance section 159 of the Civil Code permits a husband and wife to live separate under agreement between themselves. Likewise, marriage ties are not dissolved by the entry of an interlocutory decree of divorce (*Estate of Dargie,* 162 Cal. 51, [121 Pac. 320]; *Estate of Seiler,* 164 Cal. 181, [Ann. Cas. 1914B, 1093, 128 Pac. 334]), but, while the marriage relation is not ended until final judgment of divorce and one of the purposes in the postponement of the entry of final judgment is to provide an opportunity for reconciliation and resumption of marital relations (*Olson* v. *Superior Court,* 175 Cal. 250, [1 A. L. R. 1589, 165 Pac. 706]), nevertheless, after the entry of the interlocutory decree and until some change is effected either by legal act or reconciliation, the law contemplates the termination of personal relations between the parties. (*Estate of Walker,* 176 Cal. 402, 413, [168 Pac. 689]; 180 Cal. 478, 494, 495, [181 Pac. 792].) The result is that, where there is an interlocutory judgment decreeing that the parties are entitled to a divorce, even though the married status continues, the law, under the circumstances, permits the separation and recognizes it as rightful in substance. Such separation is, therefore, clearly lawful, for "lawful" denotes something which, in its substance, is sanctioned or permitted by the law, as distinguished from conformity to positive rules of law. (Anderson's Dictionary of Law.) Defendant was, therefore, lawfully separated from her husband at the time of the adoption.

[2] Plaintiff seeks to interpret section 223 as requiring consent of the husband unless the final decree of divorce has been granted. The wording of the section will not permit such an interpretation. A final judgment of divorce restores the parties to the status of single persons (Civ. Code, sec. 132), and, consequently, a divorced person is no longer married. Section 223 of the code provides that "a *married* man, not lawfully separated from his wife," and "a *married* woman, not thus separated from her husband," cannot adopt without the consent of the wife or husband. Therefore, unless the phrase "lawfully separated" refers to separation, as distinguished from final divorce, it is without meaning, for, by the term "married," divorced persons are excluded from the operation of the section.

[3]  The adoption order provided that the child was to retain the surname of Stauter; the fact that, in the adoption proceedings, defendant appeared by the name of Carithers, the name which she had always used, rather than by her real name of Lyke, is, therefore, immaterial.  There was no mistake in identity, and the court finds that the plaintiff had full knowledge of the facts at the time of the adoption proceedings, including knowledge of the financial condition of defendant.  If it had appeared that defendant had, by concealment of her status, obtained an order for adoption which would not otherwise have been granted, that might have warranted the cancellation of the order of adoption upon the ground that a fraud had been practiced upon the court.  All that appears from the record of the adoption proceedings in regard to the status of defendant is that, in the petition for adoption, defendant referred to herself as a "widow."  The order granting the petition, however, omitted any reference to the defendant as "widow," providing only that "Della A. Carithers" was granted the adoption. This is insufficient to warrant the inference that the status of defendant was concealed from the court.  Moreover, counsel for plaintiff agreed, at the trial, to proceed only upon the question of jurisdiction and, accordingly, no evidence was given concerning the question of fraud and, therefore, the question of fraud is not presented upon this appeal.

In view of the holding that the consent of defendant's husband was not essential to the validity of the order of adoption, it is unnecessary to consider the remaining points raised by counsel for defendant as to estoppel and the presumptions to be indulged in favor of the validity of the order of adoption.

The judgment canceling the order of adoption is reversed and, a new trial being unnecessary for the reason that the error consisted in the conclusions of law drawn from the findings, the trial court is directed to enter a judgment in favor of defendant and sustaining the order of adoption.

Sloane, J., and Wilbur, J., concurred.